## McDONALD *v.* HALL.

1. CONSPIRACY—EVIDENCE—CONCERT OF ACTION.

In an action for conspiracy and malicious arrest, testimony concerning the doings and sayings of certain participants which, separately considered, might seem objectionable, on the whole record is made admissible by inferential proof of concert of action in a common purpose; if in the end concert of action is apparent, such testimony is admissible.

2. SAME.

Every person entering into a conspiracy already formed is deemed to be a party to all acts done in furtherance of the common design; and acts and declarations of co-conspirators done at different times and by different individuals are admissible in evidence against all, since whatever is said or done by any one of the number in furtherance of the common design, becomes a part of the *res gestæ*, and is the act or saying of all.

3. TRIAL—PLEADING—ISSUE.

   Where a charge in the declaration that one of the defend-
   ants debauched the infant daughter of plaintiff was stated
   by way of inducement to the principal subject of the
   count, which alleged a "conspiracy of all the defendants
   to wrong the plaintiff by falsely charging him" with com-
   pounding a felony, a case of debauchery was not in issue,
   and it was reversible error for plaintiff's counsel, through-
   out the trial, against objections of defendants' counsel,
   to persistently inject the issue of the debauchery, al-
   though the question of debauchery was not submitted to
   the jury as a ground of recovery.

4. SAME—ARGUMENT OF COUNSEL.

   In such action for conspiracy, it was reversible error for
   plaintiff's counsel, in his closing argument to the jury,
   to appeal to the passions and prejudices of the jurors on
   the subject of the debauchery of plaintiff's infant daugh-
   ter, which was not in issue in the case.

Error to Shiawassee; Searl, J., presiding. Submit-
ted April 5, 1918. (Docket No. 35.) Decided Decem-
ber 27, 1918.

Case by Hugh A. McDonald against Louis C. Hall,
Sr., and others for conspiracy and malicious arrest.
Judgment for plaintiff against defendant Hall, Sr., who
brings error. Reversed.

*John T. McCurdy* (*Edwin H. Lyon,* of counsel), for
appellant.

*Albert L. Chandler* and *James H. Pound,* for ap-
pellee.

STEERE, J. This case was formerly here on certio-
rari to an order of the trial court overruling defend-
ants' demurrer to plaintiff's declaration, which was
sustained, 193 Mich. 50. That opinion incidentally
discloses the nature of this litigation and in discussing
certain peculiarities of the declaration is somewhat
premonitory of the difficulties and differences which

developed under it upon trial of the case. At that early stage of the proceedings the court noted "there was much controversy and disagreement as to the number of counts in the declaration, which is a very lengthy document, covering about 30 pages of the printed record."

Although it was possible to discover by careful analysis of the "lengthy document" and point out what could be recognized as four separate counts, the "much controversy and disagreement" over that pleading has continued unabated. The four counts as this court found were, *first,* that the portion of the declaration "charging all of the defendants with an assault and battery upon the person of G. Irene McDonald, the infant daughter of plaintiff, must be held to constitute one count." A charge that Louis C. Hall, Jr., debauched the infant daughter of plaintiff was held to be only introductory matter stated by way of inducement to the principal subject of the next count which alleged a "conspiracy of all the defendants to wrong the plaintiff by falsely charging him with a crime in the manner alleged." The third count was found to be "a distinct charge against all of the defendants for an assault and battery upon the plaintiff and for resulting damages." And the fourth count "is for the malicious prosecution of the plaintiff by all of the defendants acting together in and through the defendant Louis C. Hall, Sr."

Following that opinion defendants pleaded the general issue with 29 notices of special defense apparently designed to approximate the declaration in magnitude, if not in multitude of words. The trial resulted in a verdict and judgment against defendant Louis C. Hall, Sr., under the conspiracy count, for $3,400, the other defendants being found not guilty by direction of the court. A motion for a new trial on many of

the grounds repeated here was denied, and defendant Hall, Sr., has removed the judgment to this court for review on 204 assignments of error, many of which in different form center to the same legal objections.

All the parties to this action lived in Owosso. Plaintiff, Hugh McDonald, was foreman in an ice cream factory, of which his brother John was manager, where his duties confined him during regular working hours. He had four children, one of whom was a girl called Irene, then living at home and attending school. On January 8, 1915, she and a school mate named Ruth Preston went to a dance in the Moose hall between two and three blocks from her home. By previous arrangement these girls were followed after they left the dance about midnight and picked up on the street by defendant Louis C. Hall, Jr., a young man 20 years of age, and an associate named Reddy Smith, who took them to the home of Hall, Jr.'s, father, defendant Louis C. Hall, Sr., who with his wife was then absent from home, where the four remained for some time during which it was charged young Hall had sexual relations with the girl Irene. Some days later plaintiff had occasion to take his daughter to a physician for medical treatment and from what he then learned laid the matter before the proper officials and made complaint before a magistrate against young Hall for statutory rape upon his daughter. The prosecuting attorney took charge of the case for the people and after investigation consistently maintained it as a criminal charge of felony which he as public prosecutor ought to and did prosecute to final trial and adjudication in the circuit court, where young Hall was eventually acquitted, as plaintiff claims largely through the pretrial conspiring efforts of defendants and others who worked with them to that end; it being also charged in his declaration that under the conditions detailed he was deceived into agreeing to a settle-

ment of the case through the misrepresentations and
false statements made to him as to his right to do so by
an attorney named John T. McCurdy and the Rev.
C. H. Hanks, two members of the learned professions
who figured conspicuously, at least, in certain of the
events charged to constitute the conspiracy. Defend-
ant Hall, Sr., was a business man in that city, where
he ran an elevator and grain business, was a stock-
holder and director in the State Savings Bank of
Owosso, called the Gallagher Bank, of which defend-
ant Gallagher was president, and a paying member of
the church of which the Rev. Hanks was pastor.
Shortly after the matter became public Mr. Hanks
went to the factory where plaintiff worked and admit-
tedly talked the matter over with him, counseling a
settlement of the matter as plaintiff claims and he
denies, stating that he only "was trying to save the
young people," but admitting, however, that in so do-
ing he "may have referred to a double standard." He
also interviewed the prosecuting attorney in company
with the brother of Hall, Sr., and while there tele-
phoned for Hall, Sr., and son to come there, the pur-
pose of the interview being, as they stated it in a gen-
eral way to the prosecuting attorney, to see if a prose-
cution could be avoided. Later, when McCurdy ar-
rived from the south he introduced him to plaintiff and
was present at an interview in the back room of Galla-
gher's bank between the Halls, McCurdy, plaintiff and
his brother. Just how the parties came to meet there,
and what was said or promised is in marked dispute,
but Mr. Hanks, while not prepared to go into details,
gave his recollection in reply to an inquiry as to the
manner in which the case was to be handled, or dis-
posed of, "that it would have to rest entirely with the
father, representing the girl, whether this complaint
was urged or not, it rested with him to say."

When called into the case McCurdy was making

his home at the Traverse Club in San Antonio, Texas, and was telegraphed for by Hall, Sr. He testified that he started at once on receipt of the telegram, arriving at Shiawassee county on March 2d, going that afternoon at the request of one of the Halls to the bank parlors where they found the McDonald brothers and Mr. Hanks, who introduced him to the McDonalds, and the matter in relation to which he had been retained was discussed. Plaintiff testified, and we do not discover it denied, that he was called to this interview by the brother of Hall, Sr. What was proposed and said there is in marked dispute. Plaintiff claims that he had been urged by Hall, Sr., and Mr. Hanks to settle the matter up and drop the prosecution, that he was assured by McCurdy that rather than try the unwholesome case he desired to effect this in the interest of all parties; that he was an attorney of long experience and ability who would not think of countenancing anything but what was proper and lawful, and they could depend on his professional advice that such course was right, permissible and in the interest of all concerned; that plaintiff believed what they told him, listened to their overtures and entered into negotiations for a settlement.

Not claiming that any of them ever suggested to plaintiff that such course was unlawful and criminal, it was contended and testified for defendants that all overtures for settlement and demand for a money adjustment emanated from plaintiff and his proposals were tentatively entertained for the purpose of seeing how far he would go in compounding a felony.

Thereafter McCurdy figured actively in the case in the three-fold capacity of detective, witness and attorney, actively participating at the trial in the two last named. He had several friendly interviews with plaintiff, upon whose initiative they do not agree, one of which was at his own house which Hall, Sr., and the

cashier of the bank attended, in hiding, and overheard. He secured before he got through the signature of plaintiff to three agreements, or an agreement in triplicate as he calls it, to settle and withdraw the criminal case against young Hall for $5,000, making arrangements to meet him in the bank at an appointed hour and consummate the agreement. Hall, Sr., who was listening in at the time, testified he heard McCurdy assure plaintiff, who had expressed some misgivings, that it would "go through as scheduled," although on reflection he denied knowing what the schedule was or what the word meant.

As agreed, McCurdy, plaintiff, and Hall, Sr., met in the back room of Gallagher's bank after 3 o'clock the next afternoon, the other parties visibly in attendance being Gallagher and an assistant in the bank named Stanton. Gallagher had, at McCurdy's request, previously done up $5,000 in packages, taking the numbers of the bills which he stated was a task taking some little time. They then proceeded as plaintiff supposed to close the deal, with McCurdy as the moving party in charge. They sat at a table and, as McCurdy testified, he told plaintiff, "I have prepared a triplicate set of your offer in regard to this matter," which he read and plaintiff signed, Gallagher and Stanton signing as witnesses. He then told Gallagher to bring in the money, which he did and laid it upon the table. Plaintiff testified Hall, Sr., then handed it to him. After starting to count it he made some inquiry of Gallagher as to the amount in each package. After assurance by him as to the amount he asked Gallagher to put it in the bank and give him a certificate for it, to which McCurdy answered for Gallagher that he "did not wish that money in the bank," and plaintiff then proceeded to put it in his pocket, when McCurdy in a loud voice summoned defendant Herrick, a deputy sheriff stationed outside the room in

sequestered attendance, to come in and arrest plaintiff for compounding a felony and ordered plaintiff to put the money back on the table with which he complied. Plaintiff then proposed to telephone his brother or get counsel, but McCurdy told him he could not telephone or communicate with any one and directed Herrick to take charge of the money and arrest him, which he did. Herrick testified that his presence there was pursuant to an earlier request from McCurdy to be available at the hotel nearby to serve some papers and he was called from there to the bank by Stanton. McCurdy then telephoned for the prosecuting attorney and laid the matter before him, stating what had transpired was the result of plaintiff's solicitation and asked that on such evidence as he presented a warrant be authorized against plaintiff, to which the prosecutor assented, complaint being made by Hall, Sr., under a section of the statute McCurdy said he had looked up, and made reference to. The sheriff was authorized to put the money back in the bank, taking a certificate of deposit. Plaintiff employed counsel to defend him and obtained bail after which his case was continued from time to time, being eventually dismissed on advice of the prosecuting attorney that under the section of the statute McCurdy had selected and the complaint as made he could not be held.

Of the many assignments of error on admission against objection of testimony introduced by plaintiff to support the charge of conspiracy, it is sufficient to state that most of them are directed to items of testimony concerning the doings and sayings of certain participants which separately considered might seem objectionable, but on the whole record are made admissible by inferential proof of concerted action in a common purpose.

"Evidence in proof of a conspiracy is generally cir-

cumstantial and it will be sufficient if it proves the fact that the agreement to do the unlawful act existed, although its terms, the time and place of forming may not be shown." 3 Enc. Ev. p. 408.

It is not essential that all parties claimed to be participants in a conspiracy be made parties to the action, and when it is inferable from what they said and did that they were working to the same purpose, with the same object in view, so that in the end concert of action is apparent, such testimony is admissible. It may be said in general that most, if not all, objections of that character are not tenable under the recognized rules of evidence applicable to such an inquiry, well stated in Wright on Conspiracies, p. 212, in part as follows:

"In nearly all cases a conspiracy must be proved by circumstantial evidence, that is, by the proof of facts from which it may be fairly implied that the defendants had a common object, and that the acts of each, though they may be different in character, were all done in pursuance of a common end and calculated to effect the common purpose. * * * Concurrence of action on a material point is sufficient to enable the jury to presume concurrence of sentiment, and from this the actual fact of conspiracy may be inferred. Nor is it necessary to show that the conspiracy originated with the defendants, for every person entering into a conspiracy already formed is deemed to be a party to all acts done by any of the other parties, before or afterwards, if done in furtherance of the common design. It is upon this principle of a common design that the acts and declarations of co-conspirators, and acts done at different times and by different individuals are admitted in evidence against those prosecuted, as whatever is said or done by any one of the number, in furtherance of the common design becomes a part of the *res gestæ,* and is the act or saying of all."

The far more serious assignments of error are those which in various forms are directed to the persistent

and questionable manner in which throughout the trial plaintiff's counsel stressed, against all objections of counsel, intimations and rulings of the court, the issue of the debauchery, claiming speciously the right under allegations upon that subject in their voluminous declaration, asserted to have been sustained and approved by this court.

They did not have and could not try, under their declaration, a case of debauchery against young Hall, much less the other defendants, and yet all through the case that offense was emotionally made the dominant subject of their efforts, either under the guise of inducement to their conspiracy count or the claim of right under "all four counts of the declaration," which were laid against all defendants. Objection was early and often made by defendants to such endeavor.

On the former appeal the only question before this court was one of pleading. In holding that as a pleading the declaration sufficiently charged the acts complained of in the four counts as the joint acts of all the defendants the court could not and did not assume to pass upon what might develop upon the trial, and particularly stated in view of questions it was claimed the peculiarities of the declaration foreshadowed, "what the evidence may show we are not here concerned with."

What the evidence did show on the trial was that this case arose out of the criminal prosecution of Hall, Jr., for statutory rape of plaintiff's daughter, a child 13 years of age; that the only suggested grievance of plaintiff against the other defendants was a claimed conspiracy entered into by them after commission of the charged crime, and while the criminal prosecution was pending, to defeat his conviction by deceiving and ensnaring plaintiff into unwittingly compounding the felony by accepting money for settling the case and agreeing to withdraw his complaint,

under the belief from their assurances that it was right and lawful for him to do so, with no proof or pretense that they participated in or were in any way parties to any assault upon the young girl, felonious or otherwise, or even ever heard of the alleged assault until it was made public by the criminal proceeding against young Hall.

Early in the trial when objection was made to certain of plaintiff's testimony the court, after some discussion of the declaration, suggested it should be determined what it was proposed to try, whether a charge of debauchery or conspiracy or both, and was informed by the counsel who drew the declaration that the charge of debauchery was "only alleged by way of inducement, and not as a count and therefore that part of it is not proven as a count for damages. * * * That debauching the plaintiff's daughter is a cause that we have, and that it was an inducement to the conspiracy charge these people went into." Asked if they intended to ask for damages under the count for assault and battery he answered, "Not specifically against Louis C. Hall." But later, when the associate counsel for plaintiff most aggressively in charge of that side of the case proceeded against objection along lines indicting a different theory and a discussion arose, he stated,

"I tell your honor that the plaintiff in this case claims for four counts—an action for malicious prosecution, false imprisonment, assault and battery, and the injury to the child under the assault and battery clause and aggravation of it.

"*The Court:* You claim under all four counts of the declaration?

"*Mr. P.:* All four counts of the declaration."

Apparently upon this theory and as an affirmative part of his case counsel continued, against numerous objections and requests that he be required to elect

between counts, with proof of debauchery as a substantive cause of action, introducing the testimony of young Hall taken upon his trial in the criminal case, and calling among other witnesses the girl claimed to have been debauched to describe the offense in detail. Afterwards, when a question of damages arose and the court asked him if they claimed "damages for intercourse with this girl," and said that question should be settled, he declared his reason for refusing to elect as follows:

"Now, all through that declaration our great grievance is just two things as I understand, the wrong to the girl, to this man in his capacity of father, the wrong to himself in the arrest. We have a right to show these things and couple them in one declaration. The doctrine of election never applies until the testimony on any theory possible has been submitted to the court."

And later, when it was intimated by the court that counsel should state upon what different counts they expected to go to the jury, he again answered:

"I insist we are entitled to go to the jury as matter of law and for them to determine every count set forth in the declaration.
"*The Court:* All four counts?
"*Mr. P.:* All four counts."

While the court did not ultimately submit the question of debauchery to the jury as a ground of recovery, the matter was left open for counsel to ring the changes upon it until final argument of the case to the jury, in which impassioned and prejudicial appeal was made pointing to debauchery as a ground of recovery and the controlling issue for the jury to decide, counsel's peroration being, against objection and exception, in part as follows:

"Gentlemen of the jury: Now, as we approach this glad festival time now coming, Thanksgiving (which is peculiarly an American product for the giving of

thanks for the blessings that have been showered upon us by Divine Providence), as you return to your wife to eat your Thanksgiving dinner I hope you will so conduct yourselves in this case by the rendition of a verdict that will get the respect of the community, that will show that girls and women are not beasts to be handled as mere toys of men, and I hope that you will be able to say, gentlemen of the jury, as you go to your home and meet your wife and press your lips upon her mouth or forehead, 'Nellie, I have been trying cases in the circuit court here during this term. So far I have had but one opportunity to undertake to protect those that need protection, the children; I have had only one opportunity to emulate the Divine example of the Savior of mankind when he said, "Suffer little children to come unto me and forbid them not for of such is the kingdom of heaven." I say to you, the girl that I loved since you have been 18 or 19 years of age up to the present time (and as years go by I love you even more dearly than I have before), by the verdict I have written upon the records of Shiawassee county, I have shown that while there is no price to be fixed on any women, that the clouds are the limit as to the total damage for the desecrating and ruining of a child before she comes to the age of discretion by an habitual destroyer of women—not women, but of children.' "

The inducement of a pleading is but an explanatory introduction to the main allegation in which the cause of action is alleged. Although counsel insisted to the contrary, the court had held when this argument was made that there could be no recovery against young Hall in this case, but whatever right of action plaintiff had against him for debauching his daughter remained and could be pursued in a proper case. It seems patent that counsel knew from the beginning, as the court from the pleadings did not, that there was no ground for the count charging Hall, Jr., and the other defendants jointly with an assault on plaintiff's daughter, and it is indicated by this record that counsel was, at least, not frank with the court in in-

sisting they should not be required to elect as to counts "until the testimony on any theory possible has been submitted to the court"; for had their position been timely made clear, the court could and undoubtedly would have excluded certain of plaintiff's evidence and argument featuring the assault and debauchery as the dominant issue when affirmatively proving their case.

After the case had been tried and the record made all these matters were presented to the court in a motion for a new trial with numerous other grounds which need not be discussed. It was especially urged amongst other reasons that defendant was injured and prejudiced in the closing argument of plaintiff's counsel by appeals to the passions and prejudice of the jurors on the subject of young Hall's alleged debauching as above quoted in part, and failure of the court when objection was made to then check and correct counsel.

We think that for these prejudicial errors defendant should be granted a new trial.

The judgment is reversed, with costs to defendant, and a new trial granted.

OSTRANDER, C. J., and BIRD, MOORE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.