GOLDMAN v LOUBELLA EXTENDABLES

Docket No. 78-1048. Submitted May 9, 1979, at Detroit.—Decided July 10, 1979. Leave to appeal denied, 407 Mich 901.

Plaintiff, Seymour Goldman, is a retailer of women's fashions, doing business as Marti K Suburban Shops. Defendant, Loubella Extendables, is a manufacturer of women's sportswear. Plaintiff filed an action in the Wayne Circuit Court alleging an unlawful combination or conspiracy involving defendant and plaintiff's competitors to restrain trade by stopping sales of defendant's merchandise to plaintiff because plaintiff was discounting the merchandise to his retail customers. Defendant moved for summary judgment on the ground that plaintiff was unable to present any evidence of conspiracy. Defendant's affidavits in support of the motion stated that the decision not to sell to plaintiff was made by defendant's vice president in charge of sales and was not made pursuant to any request or suggestion of any other store; and, defendant had never agreed with any store to refuse to sell to another store or ceased to sell to a store at the request of another store. Plaintiff relied on his own deposition which indicated that: defendant refused to sell its merchandise to him; he was informed by his New York buying agent that he had been cut off by defendant because he discounted the price of the merchandise; he was able to purchase defendant's merchandise for a while from other retailers but his sources dried up when defendant cut off sales to those retailers which it learned were supplying him; he was told that one of defendant's sales representatives had told other retailers and salesmen that defendant would not stand still for discounting because the big stores would not stand still for discounting; the big stores regularly discounted defendant's merchandise through the device of leisurely sales; he had received calls from other retailers complaining of his discounting and had assumed

REFERENCES FOR POINTS IN HEADNOTES

[1] 73 Am Jur 2d, Summary Judgment §§ 26, 27.
[2, 3] 54 Am Jur 2d, Monopolies, Restraints of Trade, and Unfair Trade Practices § 284.
[4] 54 Am Jur 2d, Monopolies, Restraints of Trade, and Unfair Trade Practices § 458.

that they had learned he was discounting from defendant's salesman; that another retailer had told Mr. Morrie Konop that he thought Konop was reselling to plaintiff and that he had called defendant, who was going to stop shipping to Konop; and, plaintiff had heard that one of defendant's former sales representatives and a competitor of plaintiff had agreed that plaintiff should not get defendant's line of merchandise. Plaintiff also relied on the deposition of Mr. Stephen Konop, a competitor, who testified that: a sales representative of defendant warned him against discounting and stated that he was afraid of selling to Konop's Eastland store for fear of losing Hudson's business and that plaintiff had been cut off for discounting; Konop's business continued to sell defendant's merchandise to plaintiff; and, defendant later refused to sell to Konop for the reason that he supplied plaintiff and discounted. The Wayne Circuit Court, Andrew DiMaggio, J., granted summary judgment for defendant on the theory that plaintiff was unable to present any evidence of conspiracy. Plaintiff appeals. *Held:*

1. The moving party, in a motion for summary judgment under GCR 1963, 117.2(3), is required to identify by supporting affidavit those facts which it believes cannot be genuinely disputed. The opposing party must make a showing by opposing affidavits, testimony, depositions, admissions or documentary evidence on file that a genuine issue of disputed fact does exist, and, while disputed facts must be established by admissible evidence, under some circumstances, a promise to produce admissible evidence may suffice. The trial court placed an impossible burden on plaintiff by requiring him to oppose the motion through affidavits from alleged conspirators.

2. Summary judgment was premature because it was granted prior to the expiration of the time for discovery. Since plaintiff may rely on depositions to oppose the motion, the Court of Appeals can only assume, on review, that the hearsay allegations of conspiracy could be proven at trial by admissible evidence.

3. A combination under the Michigan antitrust act is formed, even absent an agreement between a manufacturer and its customers, where the manufacturer engages in tactics to fix prices which go beyond simple refusal to sell goods to persons who will not sell at stated prices. When a manufacturer goes beyond mere announcement of his policy and the simple refusal to deal and employs other means which effect adherence to his resale prices, he has put together a combination.

Reversed and remanded.

1. Judgment — Summary Judgment — Issue of Fact — Court Rules.

    A court rule providing for summary judgment requires there be a trial unless there is no genuine issue as to any material fact and the courts are liberal in finding that a "genuine issue" does indeed exist; a court, before granting a summary judgment, will give the benefit of any reasonable doubt to the opposing party and must be satisfied that it is impossible for the claim or defense to be supported at trial because of some deficiency which cannot be overcome (GCR 1963, 117.2).

2. Judgment — Summary Judgment — Antitrust Litigation.

    Summary judgment should be sparingly granted in complex antitrust litigation where motive and intent play leading roles, the proof is largely in the hands of alleged conspirators and hostile witnesses thicken the plot.

3. Judgment — Summary Judgment — Discovery.

    Summary judgment is premature if made before discovery on the disputed issues is completed.

4. Monopolies — Antitrust Act — Words and Phrases — Combinations.

    A combination under the Michigan antitrust act is formed, even absent an agreement between a manufacturer and its customers, where the manufacturer engages in tactics to fix prices which go beyond simple refusal to sell goods to persons who will not sell at stated prices; when a manufacturer goes beyond mere announcement of his policy and the simple refusal to deal and employs other means which effect adherence to his resale prices, he has put together a combination.

*Metry, Metry & Sanom,* for plaintiff.

*Sommers, Schwartz, Silver & Schwartz, P.C.* (by *John H. Shepherd),* for defendant.

Before: M. J. Kelly, P.J., and Bashara and R. B. Burns, JJ.

R. B. Burns, J. In this antitrust action plaintiff, a clothing retailer, has alleged that defendant, a clothing manufacturer, conspired or combined with plaintiff's competitors to restrict trade by

stopping sales of defendant's merchandise to plaintiff because plaintiff was selling the merchandise at a discount. The trial court granted defendant's motion for summary judgment on the theory that plaintiff was unable to present any evidence of conspiracy. GCR 1963, 117.2(3). Plaintiff appeals and we reverse.

Defendant's vice president in charge of sales submitted an affidavit in support of the motion for summary judgment. The affidavit stated that the company's sales representatives were all made aware. that they had no authority to agree with any store to refuse to sell to any other store, or even to discuss such a refusal to sell. The decision to refuse to sell to plaintiff had been made by the vice president in charge of sales personally and had not been made pursuant to any request or suggestion by another store. Defendant had never agreed with a store to refuse to sell to another store or ceased to sell to a store upon the request of another store.

Plaintiff relied upon his own deposition testimony and that of Mr. Stephen Konop to oppose the motion. Plaintiff testified that defendant manufactures a brand name label, the presence of which is necessary for the successful operation of his business. The label is readily available in most of the other high fashion clothing and department stores in his area. When the label is present in his stores, it sells rapidly, but when it is not, many of his customers go elsewhere. In 1974, defendant cancelled his orders and refused to explain why, refused to take further orders or to see him. He subsequently learned from his New York buying agent that the reason he was cut off was that he discounted the price on the merchandise. He was able for a time to make intermittent purchases

from other retailers, but his sources dried up when defendant cut off sales to those retailers which it learned were supplying him. Plaintiff asserted that large stores were able to control resources and discount with impunity such merchandise as defendant's through the device of leisurely sales. He had heard that one of defendant's sales representatives, Mr. Kasmer, had told various retailers and salesmen that defendant would not stand still for discounting because the big stores would not stand still for discounting. He had received calls from other retailers who complained of his discounting activity and assumed that they had learned he was discounting from Mr. Kasmer. Another retailer, Mr. Bernstein, had told Mr. Morrie Konop that he thought Konop was reselling to plaintiff and that he had called defendant, who was going to stop shipping to Konop. Plaintiff had heard that one of defendant's previous sales representatives had been a friend of Mr. Victor, a competing retailer, and that the representative and Victor had agreed that plaintiff should not get defendant's line of merchandise.

Mr. Stephen Konop testified that he had a clothing store from which he once sold defendant's label. Mr. Kasmer had warned him that he should not discount and had stated that he was afraid that, if he sold to Konop's Eastland store, Kasmer might lose Hudson's account. Kasmer had also told him that plaintiff was cut off because he was discounting. Konop nonetheless supplied plaintiff and discounted defendant's line himself. Defendant thereafter refused to fill his orders. Kasmer advised him that he was cut off because he supplied plaintiff and discounted.

Much of the testimony upon which plaintiff relied was hearsay, and recognized as such. Plain-

tiff argued in the alternative that admissible evidence circumstantially established conspiracy, and that, if it did not, the motion could not be resolved in defendant's favor because discovery had not been completed and plaintiff was entitled to an opportunity to develop the hearsay into admissible evidence. The trial court concluded that plaintiff had presented no evidence of conspiracy, and that plaintiff should have submitted supporting affidavits to establish that which he had attempted to establish by hearsay.

A motion for summary judgment under GCR 1963, 117.2(3) has the limited function of determining whether material issues of fact exist. The moving party is required to identify by supporting affidavit those facts which it believes cannot be genuinely disputed. The opposing party must make a showing by opposing affidavits, testimony, depositions, admissions or documentary evidence on file that a genuine issue of disputed fact does exist. *Rizzo v Kretschmer,* 389 Mich 363, 371-372; 207 NW2d 316 (1973). Opinions, conclusory denials, unsworn averments, and inadmissible hearsay do not satisfy the court rule; disputed fact must be established by admissible evidence. *Remes v Duby, (After Remand),* 87 Mich App 534, 537; 274 NW2d 64 (1978). However, under some circumstances, a promise to produce evidence may suffice. *Rizzo v Kretschmer, supra,* 374. Upon review of the motion, the court must give every reasonable doubt to the opposing party, and should not grant the motion unless convinced that it is impossible for the claim to be supported at trial because of some deficiency which cannot be overcome. *Id.,* 371-372. The court must avoid making findings of fact under the guise of determining that no issues of material fact exist. *Partrich v Muscat,* 84 Mich

App 724, 730-731; 270 NW2d 506 (1978). Summary judgment should be sparingly granted in complex antitrust litigation where motive and intent play leading roles, the proof is largely in the hands of alleged conspirators, and hostile witnesses thicken the plot. *Poller v Columbia Broadcasting System, Inc,* 368 US 464; 82 S Ct 486; 7 L Ed 2d 458 (1962).

The trial court placed an impossible burden upon plaintiff by requiring him to oppose the motion through afffidavits from alleged coconspirators. Defendant may under the court rule establish disputed fact through deposition testimony. GCR 1963, 117.3, *Rizzo v Kretschmer, supra.* Summary judgment is premature if made before discovery on the disputed issue is complete. *Johnston v American Oil Co,* 51 Mich App 646, 650-651; 215 NW2d 719 (1974). The time limit for discovery had not passed. GCR 1963, 301.7. The trial court should have either delayed resolution of the motion until discovery was completed or accepted as a promise to produce evidence that which plaintiff sought to prove through hearsay. *Cf., Rizzo v Kretschmer, supra.* The trial court having prematurely granted the motion, we will on review assume that plaintiff could prove at trial by admissible evidence his hearsay allegations.

Defendant did not by affidavit deny that it was attempting to fix resale prices or that it stopped delivery of its goods to plaintiff as part of its attempt to fix resale prices. The sole issue raised by defendant's affidavit is whether defendant conspired or combined with plaintiff's competitors to accomplish its alleged purpose of price fixing. There is no allegation that such price fixing was lawful under the "rule of reason", see, *e.g., Staebler-Kempf Oil Co v Mac's Auto Mart, Inc,* 329 Mich 351; 45 NW2d 316 (1951), or that it could be

sustained under the now-repealed fair trade act, MCL 445.151; MSA 19.321, *repealed,* 1975 PA 211.

This action was brought under the state antitrust act, which makes unlawful any conspiracy or combination between two or more persons to restrict trade or fix prices, MCL 445.701; MSA 28.31, and authorizes private suits for injunctive and monetary relief by any person injured by a violation of the act, MCL 445.711; MSA 28.38. Plaintiff need only prove the existence of a trust or combination and that defendant belonged to it, or acted for or in connection with it. The character of a trust or combination may be established by proof of its general reputation as such. MCL 445.706; MSA 28.34. Conspiracy may and generally will be established by circumstantial evidence. *McDonald v Hall,* 203 Mich 431, 438-439; 170 NW 68 (1918).

The Michigan antitrust act is patterned after the Sherman Antitrust Act, 15 USC 1, and Federal court interpretations of the Sherman Act are persuasive authority as to the meaning of the Michigan act. *Barrows v Grand Rapids Real Estate Board,* 51 Mich App 75, 83; 214 NW2d 532 (1974). The United States Supreme Court has frequently discussed the circumstances under which attempted vertical price fixing may be unlawful.

The case which sets forth what is *not* unlawful price fixing is *United States v Colgate & Co,* 250 US 300; 39 S Ct 465; 63 L Ed 992 (1919). In that case the Supreme Court affirmed dismissal of an indictment which failed to charge defendant with selling its products to dealers under *agreements* to resell at fixed prices, observing that a manufacturer may freely exercise his own independent discretion as to the parties with which he will deal, and may announce in advance the circumstances under which he will refuse to sell. Thus, if

all that is shown is that a manufacturer announced suggested resale prices, and refused to deal with those who did not follow the suggestions, no violation of the Sherman Act has·been demonstrated.

Cases setting forth what *does* violate the Sherman Act indicate that, as a practical matter, price fixing will rarely be sustainable under *Colgate.* A manufacturer may not enter into agreements with its customers obligating them to sell at fixed prices. *Dr Miles Medical Co v John D Park & Sons Co,* 220 US 373; 31 S Ct 376; 55 L Ed 502 (1911). An agreement may be express or implied from a course of dealing or other circumstances. *United States v A Schroder's Son, Inc,* 252 US 85; 40 S Ct 251; 64 L Ed 471 (1920). Whether a particular course of dealing or other circumstances indicate unlawful agreement or combination presents a jury question. *Frey & Son, Inc v Cudahy Packing Co,* 256 US 208; 41 S Ct 451; 65 L Ed 892 (1921). Where a manufacturer engages in tactics to fix prices which go beyond simple refusal to sell goods to persons who will not sell at stated prices, a combination is formed, even absent an agreement between the manufacturer and its customers. Thus, where a manufacturer attempted to fix the prices of both its wholesalers and retailers by: using markings on packages of its products, and salesmen and agents to report violations of its resale price guidelines; publishing blacklists of violators; organizing boycotts of violators; relying upon reports of competitors of violators to cut off violators; and otherwise suppressing competition by coercion of its customers, the Sherman Act was violated. *Federal Trade Comm v Beech-Nut Packing Co,* 257 US 441; 42 S Ct 150; 66 L Ed 307 (1922). Similarly, it was unlawful for a distributor

to fix prices by requiring its wholesalers to deal only with licensed retailers, who could be licenced only if they complied with prevailing local prices, to enforce licensing requirements by surveillance and to enforce resale price lists for wholesalers by putting wholesale price lists in the hands of all wholesalers and retailers. It did not matter whether the combination to fix prices occurred by agreement or by acquiescence of the wholesalers coupled with assistance in effectuating its purpose. *United States v Bausch & Lomb Optical Co,* 321 US 707; 64 S Ct 805; 88 L Ed 1024 (1944). As stated in *United States v Parke, Davis & Co,* 362 US 29; 80 S Ct 503; 4 L Ed 2d 505 (1960), when a manufacturer goes "beyond mere announcement of his policy and the simple refusal to deal, and he employs other means which effect adherence to his resale prices", he has put together a combination. Whether a combination is proved is determined by what the parties actually did rather than what they said. 362 US 29, 44. Thus, it is unlawful for a manufacturer to secure compliance by retailers by giving offending retailers' names to wholesalers in order to cut off the retailers, or to seek assurances from retailers that they will comply and threatening to cut them off if they don't comply, 362 US 29, 45-46. It is also unlawful for a manufacturer to solicit customers away from an offending retailer and give them to a competing retailer, for by doing so the manufacturer has gone beyond mere announcement of his policy and simple refusal to deal. *Albrecht v The Herald Co,* 390 US 145; 88 S Ct 869; 19 L Ed 2d 998 (1968).

Applying the foregoing principles to the facts in this case, we are not convinced that it is impossible for plaintiff's claim to be supported at trial because of some deficiency which cannot be overcome. *Rizzo v Kretschmer, supra.*

There is some indication that defendant may have combined with large retailers to fix prices. Plaintiff's statement that large stores control resources may qualify as reputation of combination. MCL 445.706; MSA 28.34. Evidence that Mr. Kasmer told persons that defendant won't stand still for discounting because big stores won't suggests an actual or tacit agreement that defendant must fix prices in order to do business with large stores. This inference is supported by evidence of Kasmer's fear of losing Hudson's account if he sold to Mr. Stephen Konop, coupled with a warning to Konop not to discount.

There is some evidence of acquiescence by other retailers coupled with assistance in effectuating defendant's price fixing. *United States v Bausch & Lomb Optical Co, supra.* Plaintiff testified that other retailers called him to complain about his discounting. Plaintiff may be able to prove that Mr. Bernstein called defendant and had Mr. Morrie Konop cut off because he resold to plaintiff.

Evidence that Mr. Kasmer warned Mr. Stephen Konop not to discount suggests pressure tactics beyond mere announcement of policy and refusal to deal. *United States v Parke, Davis & Co, supra.*

Evidence that defendant detected and cut off retailers who supplied plaintiff suggests the presence of a system of surveillance. *United States v Bausch & Lomb Optical Co, supra, Federal Trade Comm v Beech-Nut Packing Co, supra.*

Evidence that defendant's sales representative agreed with Mr. Victor to cut off plaintiff would clearly establish an unlawful agreement to restrict competition. *Dr Miles Medical Co v John D Park & Sons Co, supra.*

Reversed and remanded. Costs to plaintiff.