Farah **FAKOURI** and Sridhar Ramak-rishnan, Plaintiffs-Appellants,

v.

**PIZZA HUT OF AMERICA, INC.,**
Defendant-Appellee.

No. 86–1193.

United States Court of Appeals,
Sixth Circuit.

Argued March 10, 1987.

Decided July 21, 1987.

Steven D. Weything (argued), Miller, Canfield, Paddock, and Stone, Lansing, Mich., for defendant-appellee.

J. Thomas Franco (argued), Gerald A. Sniderman & Assoc., Southfield, Mich., for plaintiffs-appellants.

Before ENGEL, KRUPANSKY, and GUY, Circuit Judges.

KRUPANSKY, Circuit Judge.

Plaintiffs-appellants Farah Fakouri (Fakouri) and Sridhar Ramakrishnan (Ramakrishnan) (collectively, plaintiffs) appealed from the district court's order granting summary judgment in favor of the defendant-appellee Pizza Hut of America, Inc. (Pizza Hut) in this diversity action commenced under the Michigan Minimum Wage Law, Mich.Comp.Laws § 408.381 *et seq.*, to collect overtime compensation.

The record disclosed the following facts. Plaintiffs were employed as "salaried assistant managers" (SAMs) by Pizza Hut and worked at Pizza Hut restaurants located within the State of Michigan. As SAMs, plaintiffs were paid according to Pizza Hut's "Salaried Assistant Manager Plan" (the Plan). Under the Plan, SAMs were guaranteed a fixed weekly salary whether they worked more or less than 40 hours in a given week. Their employment status as fixed salaried employees was explained and distinguished from the status of employees who were paid on an hourly basis when they commenced employment with Pizza Hut. They were also notified that the number of hours they were expected to work would fluctuate from week to week.

Under the Plan, SAMs were also paid overtime compensation at the rate of 1½ times the hourly "regular rate" when they worked in excess of 40 hours during a given week. It was Pizza Hut's calculation of this regular rate which gave rise to the instant controversy. The regular rate was computed by dividing the guaranteed weekly salary by the number of hours actually worked during a particular week. The overtime compensation was calculated as one half of the regular rate multiplied by the number of hours over 40 worked that week. Total compensation was then derived by adding the overtime compensation to the guaranteed weekly salary.[1] Both plaintiffs signed forms acknowledging the use of the "fluctuating workweek" method of calculating their pay.

On February 7, 1985, plaintiffs commenced the present action in the Wayne County, Michigan Circuit Court alleging that Pizza Hut's computation of overtime compensation violated various provisions of Michigan's Minimum Wage Law of 1964. Mich.Comp.Laws § 408.381 *et seq.* The complaint was served upon Pizza Hut, which on March 13, 1985, filed a petition to remove the action to the United States District Court for the Eastern District of Michigan with jurisdiction anchored upon diversity of citizenship. Paragraph 10 of the petition stated:

> Petitioner presents herewith a bond with good and sufficient surety, conditioned that your petitioner will pay all costs and disbursements incurred by reason of the removal proceedings should it be determined that said case is not removable or has been improperly removed to this Court.

Filed with the petition was a document entitled "Limited Power of Attorney" by which the Safeco Insurance Company authorized several individuals to act as its sureties to execute removal bonds. The removal bond, which had in fact been executed on March 12, 1985, did not accompany the petition.

---

1. For example, if the guaranteed salary was $278.85 per week, and if an employee worked 55 hours during a particular week, his regular hourly rate would have been computed by dividing $278.85 by 55, or $5.07 per hour. His overtime compensation was one half of his hourly rate, or $2.54, multiplied by the number of hours over 40, or $38.10 ($2.54 × 15). This was added to the guaranteed salary resulting in total compensation for that week of $316.95.

On March 21, 1985, plaintiffs filed a response to the removal petition in which they noted that a removal bond had not been attached to the petition. Upon receipt of this response, Pizza Hut discovered that it had inadvertently failed to file the bond with petition. Pizza Hut immediately filed the misplaced bond with the district court.

Plaintiffs thereafter moved for remand of the case to state court arguing that failure to file the bond with the petition or within 30 days of service of the complaint invalidated the removal. On June 24, 1985, the district court, in an opinion issued from the bench, concluded that the bond was effective as of March 12, 1985, the day it was executed, and that the plaintiffs, therefore, had not been injured by the failure to file the bond within the 30 day time limit prescribed by the removal statute. 28 U.S.C. § 1446(d). Accordingly, the district court denied plaintiffs' motion for remand.

Thereafter, Pizza Hut filed a motion for summary judgment urging that it was exempted from coverage under the Michigan Minimum Wage Law, and, assuming arguendo that it was subject to the Michigan law, its computation of overtime compensation for SAMs was in accordance therewith. On January 29, 1986, the district court granted Pizza Hut's motion, and plaintiffs thereafter commenced this timely appeal. On appeal, plaintiffs assigned as error the district court's denial of their motion to remand the case to state court and its subsequent grant of summary judgment in favor of Pizza Hut.

■ An appellate court has jurisdiction to consider the denial of a motion to remand a case to state court when coupled with an appeal of a final judgment. *Jones v. Newton,* 775 F.2d 1316, 1317 (5th Cir. 1985). "In reviewing a denial of a motion to remand a removed case, we look to whether the case was properly removed to federal court in the first place." *Takeda v. Northwestern Nat. Life Ins. Co.,* 765 F.2d 815, 818 (9th Cir.1985). Plaintiffs argued that the failure to timely file the removal bond rendered Pizza Hut's attempt to remove the action ineffective and that the

district court therefore erred in refusing to remand the case to the state court.

28 U.S.C. § 1446 provides, in part:

(a) A defendant or defendants desiring to remove any civil action or criminal prosecution from a State court shall file in the district court of the United States for the district and division within which such action is pending a verified petition containing a short and plain statement of the facts which entitle him or them to removal together with a copy of all process, pleadings and orders served upon him or them in such action.

(b) The petition for removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

\* \* \* \* \* \*

(d) *Each petition for removal of a civil action or proceeding,* except a petition in behalf of the United States, *shall be accompanied by a bond with good and sufficient surety* conditioned that the defendant or defendants will pay all costs and disbursements incurred by reason of the removal proceedings should it be determined that the case was not removable or was improperly removed.

(emphasis added).

"It is plain that the [federal] court acquires its [removal] jurisdiction from the petition and not from the bond...." *Tucker v. Kerner,* 186 F.2d 79, 82 (7th Cir.1950). The purpose of the removal bond "is to assure an aggrieved party that he can collect his costs and disbursements attributable to a wrongful removal or, in the words of the statute, where it is 'determined that the case was not removable or was improperly removed.'" 1A J. Moore, B. Ringel & J. Wicker, *Moore's Federal Practice* ¶ 0.168 [3.–7] (2d ed. 1986) (footnote omitted). "The requirement of a bond is man-

datory, but a defect in the bond that is later corrected generally will not defeat federal jurisdiction." 14A C. Wright, A. Miller & F. Cooper, *Federal Practice and Procedure* § 3735 (2d ed. 1985) (footnotes omitted). In *Tucker, supra,* the removing defendant failed to file the bond simultaneously with the petition, but nevertheless filed it before the thirty day time limit for filing the petition had expired:

It is not questioned either that the case was one which the defendants had a right to remove or that their petition for removal failed to comply with the statute. In view of the authorities, we think it is plain that the court thereby acquired jurisdiction. And no contention is made that the plaintiff was prejudiced or injured in any manner by the fact that the bond was filed subsequently rather than at the same time of the petition.

\* \* \* \* \* \*

In our view, the word "accompanied" as used in this statute does not necessarily mean simultaneously. It may also mean in relation to, connected with, or to follow. We think and so hold that the procedure employed was a substantial, if not a literal, compliance with the statute, and that the motion for remand was properly denied.

186 F.2d at 82–83.

In the case at bar, the removal bond became effective on March 12, 1985 upon its execution and protected the plaintiffs against improper removal and the costs associated therewith. The plaintiffs acknowledged in their response that the federal court had jurisdiction premised upon diversity of citizenship, thereby subjecting the action to removal. *See* 28 U.S.C. § 1441(a) ("[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants...."). The petition referred to the "attached" removal bond, and the bond, once its inadvertent omission was discovered, was immediately filed with the district court. Under these circumstances, this court cannot conclude that the district court erred in denying plaintiff's motion to remand the action to state court.

On appeal, the plaintiffs also argued that the district court erred in entering summary judgment in favor of Pizza Hut on their claims for unpaid overtime compensation under the Michigan Minimum Wage Law, Mich.Comp.Laws. § 408.381 *et seq.,* which provides, in part:

Except as otherwise provided in this section, an employee shall receive compensation at not less than 1½ times the regular rate at which the employee is employed for employment in a workweek in excess of 40 hours.

Mich.Comp.Laws § 408.384a(1). Plaintiffs have asserted that the fluctuating workweek method of calculating overtime compensation, as embodied in the Plan, was not a permissible method of calculating overtime pay under § 408.384a(1). In essence, plaintiffs have argued under Michigan law, that although term "regular rate" was not defined in the statute, it should have been calculated by dividing the guaranteed weekly salary by 40 hours per week, rather than the hours actually worked during a given week.

Plaintiffs have conceded that Pizza Hut's method of calculating the regular and overtime rates was proper under the federal Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.* 29 U.S.C. § 207(a)(1) provides:

Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours *unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.*

(emphasis added). The Fair Labor Standards Act, like the Michigan Minimum Wage Law, does not define the term "regular rate." The Supreme Court, in interpret-

ing this section, however, explicitly approved of the fluctuating work week method of calculating the "regular rate."

No problem is presented in assimilating the computation of overtime for employees under contract for a fixed weekly wage for regular contract hours which are the actual hours worked, to similar computations for employees on hourly rates. Where the employment contract is for a weekly wage with variable or fluctuating hours the same method of computation produces the regular rate for each week. As that rate is on an hourly basis, it is regular in the statutory sense inasmuch as the rate per hour does not vary for the entire week, though week by week the regular rate varies with the number of hours worked. It is true that the longer the hours the less the rate and the pay per hour. This is not an argument, however, against this method of determining the regular rate of employment for the week in question. Apart from the Act if there is a fixed weekly wage regardless of the length of the workweek, the longer the hours the less are the earnings per hour. * * * It is this quotient which is the "regular rate at which an employee is employed" under contracts of the types described and applied in this paragraph for fixed weekly compensation for hours, certain or variable.

*Overnight Motor Transp. Co. v. Missel,* 316 U.S. 572, 580, 62 S.Ct. 1216, 1221, 86 L.Ed. 1682 (1942). *See also Highlander v. K.F.C. Nat. Management Co.* 805 F.2d 644, 647 (6th Cir.1986); 29 C.F.R. § 778.-114.

Both the federal and the Michigan statutes employ the term "regular rate" without defining it. Both require that overtime compensation be paid at 1½ times the "regular rate." By the time the Michigan legislature enacted the overtime compensation provisions of the Michigan Minimum Wage Law, 1974 Mich.Pub.Acts 304 (effective April 1, 1975), the term "regular rate" had been firmly defined by federal courts and

the fluctuating workweek method of calculating overtime compensation had been approved by the Supreme Court for over thirty years. The Michigan legislature elected to employ language similar to that incorporated in the FLSA and used the same term "regular rate" in delineating employers' overtime compensation obligations.

■ Michigan courts have often considered the interpretation given to federal statutes when interpreting analogous state statutes. *See, e.g., Michigan Employment Relations Comm. v. Reeths-Puffer School Dist.,* 391 Mich. 253, 215 N.W.2d 672, 675 (1974) (NLRA and Michigan Public Employment Relations Act); *Evening News Ass'n v. City of Troy,* 417 Mich. 481, 339 N.W.2d 421 (1983) (state and federal freedom of information acts); *Goldman v. Loubella Extendables,* 91 Mich.App. 212, 283 N.W.2d 695 (1979) (state and federal anti-trust acts). Absent any indication that the Michigan legislature or courts would construe the term "regular rate" as used in Mich. Comp.Laws § 408.384a differently than that term has been defined under the FLSA, this court concludes that the fluctuating workweek method of calculating the regular rate and overtime compensation is authorized by the Michigan Minimum Wage Law, and that Pizza Hut's SAM compensation plan therefore complies with § 408.384a.[2] Accordingly, the district court did not err in granting summary judgment in favor of Pizza Hut, and its judgment is, therefore, hereby AFFIRMED.

---

2. Because Pizza Hut's computation of overtime pay complies with Michigan law, this court does not address Pizza Hut's argument that it was exempt from the Michigan Minimum Wage Law.